UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kroll Ontrack, Inc., | Civil No. 13-302 (DWF/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Devon IT, Inc., | |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| Mitts Law, LLC f/k/a Mitts Milavec, LLC; Maurice R. Mitts; and Stanley Milavec, | |
| Third-Party Defendants. | |

Jonathon T. Naples, Esq., and Keith S. Moheban, Esq., Leonard Street and Deinard, PA, counsel for Plaintiff.

Charles A. McCauley, III, Esq., Gary M. Samms, Esq., Obermayer Rebmann Maxwell & Hippel LLP; and Daniel J. Sathre, Esq., Mackall, Crounse & Moore, PLC, counsel for Defendant Devon and Third-Party Plaintiff.

William E. Parker, Esq. counsel for Third-Party Defendants.

**INTRODUCTION**

This matter is before the Court on a Motion to Dismiss for Lack of Personal

Jurisdiction brought by Third-Party Defendants Mitts Law, LLC f/k/a Mitts Milavec,

LLC ("Mitts Law"),[1] Maurice R. Mitts ("Mitts"), and Stanley Milavec ("Milavec") (collectively "Third-Party Defendants") (Doc. No. 20). For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Plaintiff Kroll Ontrack, Inc. ("Kroll") is a corporation organized under the laws of the State of Minnesota with its principal place of business located in Eden Prairie, Minnesota. (Doc. No. 1; Doc. No. 11 ("Third-Party Compl.") ¶ 10.) Defendant and Third-Party Plaintiff Devon IT, Inc. ("Devon") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in King of Prussia, Pennsylvania. (*Id.* ¶ 9.) Third-Party Defendant Mitts Law is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania. (*Id.* ¶ 11.) Third-Party Defendant Mitts ("Mitts") is an attorney licensed in Pennsylvania with a business office located in Philadelphia, Pennsylvania. (*Id.* ¶ 12.) Third-Party Defendant Milavec ("Milavec") is an attorney licensed in Pennsylvania with a business office located in Philadelphia, Pennsylvania. (*Id.* ¶ 13.) Mitts and Milavec are the founding partners of Mitts Law and were the two equity partners during all times relevant to this proceeding. (*Id.* ¶¶ 12, 13.)

Devon engaged the legal services of Mitts Law for representation in litigation in Pennsylvania ("Pennsylvania Litigation"). (*Id.* ¶ 17.) Pursuant to a fee agreement

---

[1] Mitts Law is a successor in interest of Mitts Milavec, LLC, and was formerly known as Mitts Milavec, LLC. (Doc. No. 11 ("Third Party Compl.") ¶ 11.) The Court refers to both Mitts Law and Mitts Milavec, LLC as "Mitts Law."

between Mitts Law and Devon, Mitts Law would receive $4 million from a litigation funder, and Mitts Law would be obligated to represent Devon and two other plaintiffs through trial and to pay all costs for the Pennsylvania Litigation. (*Id.* ¶ 30, Ex. A.) Mitts Law encouraged Devon to retain Kroll to serve as its "E-discovery Liaison" and to provide project management services in the Pennsylvania Litigation. (*Id.* ¶ 19.) The description of the contracted work is memorialized in the Statement of Work ("SOW"). (*Id.* ¶ 19, Ex. D.) Mitts Law negotiated the SOW and sent it to Devon for execution. (*Id.* ¶ 20.) The SOW read, in part, as follows:

> The intent of this [SOW] is to define activities, deliverables, and pricing to meet the objectives of the Legal Technologies project for [Mitts Law] and [Devon] ("Client"). The project may include assisting the Client in the processing, review, and production of electronically stored information ("ESI") and/or paper documents. All work performed by [Kroll] on this project will be conducted at the direction of and under the supervision of [Mitts Law] in their capacity as counsel to [Devon] on their matter and as such, all communications and documents exchanged between [Kroll], [Mitts Law] and [Devon] shall be protected by the attorney-client privilege and work product doctrine.

(*Id.* ¶ 19, Ex. D.) Mitts Law attorneys were in "direct and extensive" contact with Kroll over the course of the Pennsylvania Litigation. (*Id.* ¶ 21.) Karen Anderson was the main Kroll contact for Mitts Law for issues regarding electronic data. (Doc. No. 29, Mulhern, Jr. Aff, Ex. 2 at 207-208.) Ms. Anderson was located in Minnesota. (*Id.*) Kroll would send invoices to Devon which would then be forwarded to Mitts Law with the expectation that Third-Party Defendants would pay Kroll directly. (Third Party Compl. ¶ 34.)

Mitts Law was dissatisfied with the services of Kroll and contacted Kroll directly to resolve service issues and reduce fees for poorly performed services. (*Id.* ¶ 26, Ex. F & ¶ 33.) Mitts contacted Kroll himself about reducing the fees because of his dissatisfaction with Kroll's performance of services. (*Id.* ¶ 33, Ex. G at 107.)

A sum of $250,000 in litigation funding became available to Mitts Law with the understanding that the money would be used to pay Kroll's invoices. (*Id.* ¶¶ 35-36.) Mitts Law never paid the $250,000 to Kroll and instead retained the money. (*Id.* ¶¶ 37-38.) Because Kroll did not receive payment, Kroll ceased providing services and terminated Mitt Law's and Devon's access to the document review database it operated for the Pennsylvania Litigation. (*Id.* ¶ 39.)

Kroll filed a Complaint against Devon in District Court for the State of Minnesota. (Doc. No. 1, ¶ 1, Ex. A ("Kroll Compl.").) Devon removed the action to United States District Court for the District of Minnesota. (Doc. No. 1; Third Party Compl. ¶ 14.) Kroll's Complaint centers on the alleged failure on the part of Devon to pay Kroll for services provided. (Kroll Compl.) Kroll asserts three causes of action: Breach of Contract, Account Stated, and Unjust Enrichment. (*Id.*) Devon filed a counterclaim against Kroll and a Third-Party Complaint against Third-Party Defendants. (Doc. No. 9; Third-Party Compl.) Third-Party Defendants now move to dismiss the Third-Party Complaint based on a lack of personal jurisdiction.

## DISCUSSION

### I. Legal Standard

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir. 1992)). To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1387 (8th Cir. 1995)).

When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar,* 330 U.S. 731, 735 n.4 (1947)). For the purpose of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the Court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Digi–Tel,* 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Northrup King,* 51 F.3d at 1387. The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process,

and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *WorldWide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether a defendant's contacts with the forum state establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 648 (8th Cir. 2003). In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n.9, 416, 418–19 (1984)). Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum

and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels,* 65 F.3d at 1432 (quoting *Burger King,* 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels,* 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.,* 63 F.3d 694, 697 (8th Cir. 1995). The third factor distinguishes between specific and general jurisdiction. *Digi–Tel,* 89 F.3d at 523 n.4 (citing *Wessels,* 65 F.3d at 1432 n. 4).

## II. Specific Jurisdiction over Third Party Defendants

Devon asserts specific jurisdiction exists here. In support of its assertion of specific jurisdiction, Devon argues that Mitt Law's contacts with Minnesota are sufficient for Third-Party Defendants to "reasonably anticipate being haled into court" in Minnesota in an action by Kroll against Devon for the unpaid invoices. Devon points to the agreement and interaction between Mitts Law and Kroll (which Mitts Law knew was located in Minnesota) as an indication that Mitts Law purposefully availed itself of the privilege of conducting activities within Minnesota and the protections of Minnesota laws. (*Id.*)

7

Third-Party Defendants argue that the contacts in Minnesota are not sufficient to satisfy the minimum contacts requirement. (Doc. No. 32 at 5.) In particular, Third-Party Defendants assert that their mail and telephone contacts with Minnesota are insufficient to establish personal jurisdiction. (*Id.* at 6.) Third-Party Defendants contend that neither the place of contracting nor the place of performance conclusively determines personal jurisdiction. (Doc. No. 32 at 7.) Further, they claim that Devon failed to establish personal jurisdiction over each individual Third-Party.

The Court first considers the nature, quality, and quantity of the Third- Party Defendants' contacts with Minnesota. Based on the preceding description of the record, it is apparent that Mitts Law engaged in regular communication with Kroll, a Minnesota company, in the course of its representation of Devon in the Pennsylvania Litigation. Mitts Law attorneys negotiated the SOW on behalf of Devon, and Mitts Law advised Devon to agree to the SOW. Further, Mitts Law contacted Kroll directly on issues regarding its services for Devon. The Court concludes that these contacts with Minnesota are not random, fortuitous, or attenuated, but rather demonstrate an intentional and ongoing relationship with a Minnesota company, and go beyond solely interstate mail or telephone contacts. The record also indicates, at this early stage of litigation, that Third-Party Defendants Mitts and Milavec, who were the firm's two founding and only equitable partners at the time, were directly involved in and aware of the contacts. Specifically, for example, Mitts directly communicated with Kroll regarding its poor

performance and sought to negotiate a reduction in fees. (Third-Party Compl. ¶ 33, Ex. G at 107.)[2] Thus, the Court concludes that each Third-Party Defendant purposefully availed itself or himself of the privilege of conducting business within Minnesota, so as to reasonably anticipate being haled into court there.

The Court next considers the relationship between the cause of action and Third-Party Defendants' contacts. Kroll's Complaint asserts three causes of action arising from Devon's failure to pay Kroll for their services in connection with the Pennsylvania Litigation. Devon's claims against Mitts Law arise out of Mitts Law's alleged failure to remit payment to Kroll. The services provided by Kroll were negotiated and handled by Mitts Law, not Devon directly. The Court finds the negotiation of the SOW and fee arrangement and regular business communications by Mitts Law and its attorneys with Kroll to be sufficient indications that Third-Party Defendants' contacts are closely enough related to the cause of action for the Court to exercise specific jurisdiction over Third-Party Defendants.

In addition, the final two factors, which are accorded less weight in the Court's analysis, also support jurisdiction. Minnesota has an obvious interest in providing a forum, in which Kroll, a Minnesota company, may fully litigate its claims. *See Northrup*, 51 F.3d at 1389. In addition, the convenience of the parties favors jurisdiction. A plaintiff is normally afforded its selected forum. Kroll, and potentially witnesses

---

[2] The Court acknowledges that the record is less clear as to Milavec's personal contacts. The Court will entertain a future motion to reconsider should discovery reveal that Milavec's contacts are insufficient. *See* L. R. 7.1(j).

9

therefrom, are in Minnesota.  The Court recognizes that both Devon and Third-Party Defendants are based in Pennsylvania, but any inconvenience to Third-Party Defendants in litigating in Minnesota would be similarly experienced by Kroll if required to litigate elsewhere.

Based on the record before it, the Court concludes that Devon has made a prima facie showing that Third-Party Defendants are subject to specific jurisdiction of the Court.  The Court concludes that Third-Party Defendants should have reasonably anticipated being haled into court in Minnesota in a dispute related to their relationship to Kroll and Devon.  The Court acknowledges that Third-Party Defendants' contacts with Minnesota are not far beyond the minimum necessary for the exercise of personal jurisdiction.  The Court, however, is not required to determine the "best" forum for the suit but rather, the Court must determine whether minimum contacts exist so that the exercise of jurisdiction over Third-Party Defendants does not offend traditional notions of fair play and substantial justice.  In this instance, the Court finds such minimum contacts do exist.  Therefore, the Court denies Third-Party Defendants' motion to dismiss.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Third-Party Defendants' Motion to Dismiss (Doc. No. [20]) is **DENIED**.

Dated: July 26, 2013          s/Donovan W. Frank
                              DONOVAN W. FRANK
                              United States District Judge