# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kroll Ontrack, Inc.,                                  Civil No. 13-302 (DWF/TNL)

              Plaintiff,

v.                                                    **MEMORANDUM**
                                                      **OPINION AND ORDER**

Devon IT, Inc.,

              Defendant and
              Third-Party Plaintiff,

v.

Mitts Law, LLC f/k/a Mitts Milavec, LLC;
Maurice R. Mitts; and Stanley Milavec,

              Third-Party Defendants.

---

Bryce Aaron Young, Esq., Jonathon T. Naples, Esq., and Keith S. Moheban, Esq., Stinson Leonard Street LLP, counsel for Plaintiff.

Gary M. Samms, Esq., Obermayer Rebmann Maxwell & Hippel LLP; and Daniel J. Sathre, Esq., DeWitt, Mackall, Crounse & Moore, SC, counsel for Defendant and Third-Party Plaintiff.

Dexter R. Hamilton, Esq., Nadia B. Hasan, Esq., Seven H. Silton, Esq., and Thomas P. Kane, Esq., Cozen O'Connor, counsel for Third-Party Defendants.

---

## INTRODUCTION

This matter is before the Court on a Renewed Motion to Dismiss Third-Party Complaint Following Permitted Jurisdictional Discovery brought by Third-Party Defendants Mitts Law, LLC f/k/a Mitts Milavec, LLC ("Mitts Law"),[1] Maurice R. Mitts ("Mitts"), and Stanley Milavec ("Milavec") (collectively, "Third-Party Defendants") (Doc. No. 114). For the reasons set forth below, the Court grants the motion.

## BACKGROUND

The facts of this case were previously set forth in the Court's July 26, 2013 Memorandum Opinion and Order (the "July 2013 Order"). (Doc. No. 50.) The Court summarizes and updates the relevant facts below.

Plaintiff Kroll Ontrack, Inc. ("Kroll") is a corporation organized under the laws of, and with its principal place of business in, Minnesota. (Doc. No. 11, Third-Party Compl. ¶ 10.) Defendant and Third-Party Plaintiff Devon IT, Inc. ("Devon") is a Pennsylvania corporation with its principal place of business in Pennsylvania. (*Id.* ¶ 9.) Third-Party Defendant Mitts Law is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. (*Id.* ¶ 11.) Third-Party Defendants Mitts and Milavec are attorneys licensed in Pennsylvania with a business office located in Philadelphia, Pennsylvania. (*Id.* ¶¶ 12-13.) Mitts and Milavec are the founding partners of Mitts Law and were the two equity partners during all times relevant to this proceeding. (*Id.*)

---

[1]     Mitts Law is a successor in interest of Mitts Milavec, LLC, and was formerly known as Mitts Milavec, LLC. (Doc. No. 11 ("Third-Party Compl.") ¶ 11.) The Court refers to both Mitts Law and Mitts Milavec, LLC, as "Mitts Law."

Devon retained the legal services of Mitts Law for representation in litigation in

Pennsylvania ("Pennsylvania Litigation").  (*Id.* ¶ 17.)  Pursuant to a fee agreement

between Mitts Law and Devon, Mitts Law would receive $4 million from a litigation

fund, and Mitts Law would be obligated to represent Devon and two other plaintiffs

through trial and to pay all costs for the Pennsylvania Litigation.  (*Id.* ¶ 30, Ex. A.)

According to the Third-Party Complaint, Mitts Law urged Devon to retain Kroll to serve

as its "E-Discovery Liaison" and to provide project management services in the

Pennsylvania Litigation.  (*Id.* ¶ 19.)  The description of the contracted work is

memorialized in the Statement of Work ("SOW").  (*Id.* ¶ 19, Ex. D.)  Mitts Law

negotiated the SOW and the SOW was executed by Devon and Kroll.  (*Id.* ¶¶ 19, 20

& Ex. D.)  The SOW provides, in part:

> The intent of this [SOW] is to define activities, deliverables, and pricing to
> meet the objectives of the Legal Technologies project for [Mitts Law] and
> [Devon] ("Client").  The project may include assisting the Client in the
> processing, review, and production of electronically stored information
> ("ESI") and/or paper documents.  All work performed by [Kroll] on this
> project will be conducted at the direction of and under the supervision of
> [Mitts Law] in their capacity as counsel to [Devon] on their matter and as
> such, all communications and documents exchanged between [Kroll],
> [Mitts Law] and [Devon] shall be protected by the attorney-client privilege
> and work product doctrine.

(*Id.* ¶ 19, Ex. D.)  Devon alleges that Mitts Law attorneys were in "direct and extensive"

contact with Kroll over the course of the Pennsylvania Litigation.  (*Id.* ¶ 21.)  Devon has

submitted evidence, for example, that the main Kroll contact for Mitts Law was located

in Minnesota.  (Doc. No. 29 ("Mulhern, Jr. Aff."), Ex. 2 at 207-08.)  In addition, Devon

contends that Kroll would send invoices to Devon, who would then forward the invoices

to Mitts Law with the expectation that Third-Party Defendants would pay Kroll directly pursuant to their fee arrangement.  (Third-Party Compl. ¶ 34.)

At some point, Mitts Law became dissatisfied with Kroll's services and contacted Kroll directly to resolve the issues and to reduce fees for poorly performed services.  (*Id.* ¶¶ 26, 33 & Ex. F.)  Mitts contacted Kroll himself about reducing the fees because of his dissatisfaction with Kroll's performance of services.  (*Id.* ¶ 33, Ex. G at 107.)

Devon alleges that a sum of $250,000 in litigation funding was to be used by Mitts Law to pay Kroll's invoices.  (*Id.* ¶¶ 35-36.)  Devon also alleges that Mitts Law never paid the $250,000 to Kroll and instead retained the money.  (*Id.* ¶¶ 37-38.)  Because Kroll did not receive payment, Kroll ceased providing services and terminated Mitts Law's and Devon's access to the document review database it operated for the Pennsylvania Litigation.  (*Id.* ¶ 39.)

Kroll filed a Complaint against Devon in District Court for the State of Minnesota. (Doc. No. 1, Notice of Removal ¶ 1, Ex. A ("Kroll Compl.").)  Devon removed the action to this Court.  (Notice of Removal; Third Party Compl. ¶ 14.)  Kroll's Complaint centers on the alleged failure on the part of Devon to pay Kroll for services provided.  (Kroll Compl. ¶ 5.)  Kroll asserts three causes of action:  (1) Breach of Contract; (2) Account Stated; and (3) Unjust Enrichment.  (*Id.* ¶¶ 6-20.)  Devon filed a counterclaim against Kroll and a Third-Party Complaint against Third-Party Defendants.  (Doc. No. 9; Third-Party Compl.)

Third-Party Defendants moved to dismiss the Third-Party Complaint based on a lack of personal jurisdiction.  In the July 2013 Order, the Court denied the motion, but in

4

doing so (and later during a November 26, 2013 hearing), the Court indicated that it would entertain a motion to reconsider its decision after the parties conducted jurisdictional discovery.  Third-Party Defendants now renew their motion to dismiss for lack of jurisdiction.[2]  The Court considers the renewed motion below.

**DISCUSSION**

**I.     Legal Standard**

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists.  *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir. 1992)).  To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant.  *Digi–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1387 (8th Cir. 1995)).  When, however, the parties have completed jurisdictional discovery, a plaintiff has "the burden of proving by a preponderance of the evidence the facts necessary to establish personal jurisdiction over the defendant."  *Safco Prods. Co. v. Welcom Prods., Inc.*, 730 F. Supp. 2d 959, 963

---

[2]     Devon asserts that this motion is premature because, at the time it was filed, jurisdictional discovery had not been completed.  (Doc. No. 123 at 2.)  The Court notes, however, that prior to the hearing on this matter, jurisdictional discovery had been completed.  Despite discovery having been completed, neither party cited to the relevant deposition testimony in their briefs; nor did either party request to file a supplemental brief prior to the hearing.

(D. Minn. 2010) (citing *Piexzenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001)). Here, considering that Devon was afforded ample time to complete jurisdictional discovery, the Court concludes that Devon must prove the facts necessary to establish personal jurisdiction by a preponderance of the evidence.

In determining whether a court has personal jurisdiction over a non-resident defendant, the requirements of both the state long-arm statute and federal due process must be satisfied. *Northrup King,* 51 F.3d at 1387.  The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotations omitted).  The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *WorldWide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether a defendant's contacts with the forum state establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 648 (8th Cir. 2003). In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n.9, 416, 418–19 (1984)). Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels,* 65 F.3d at 1432 (quoting *Burger King,* 471 U.S. at 472). Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels,* 65 F.3d at 1432.

## II.     Specific Jurisdiction over Third-Party Defendants

The Court originally determined that Devon made a prima facie showing that each Third-Party Defendant purposefully availed itself or himself of the privilege of conducting business within Minnesota, so as to reasonably anticipate being haled into court in Minnesota. Specifically, the Court found that the Third-Party Defendants' negotiation of the SOW, fee arrangement with Devon, and communications by Mitts Law

and its attorneys with Kroll in Minnesota, supported a finding that Third-Party
Defendants' contacts were closely enough related to the cause of action for the Court to
exercise specific jurisdiction over Third-Party Defendants.

Third-Party Defendants now urge the Court to revisit its decision following the
completion of jurisdictional discovery.  Third-Party Defendants contend that Devon is
unable to establish personal jurisdiction over them for one essential reason— namely,
that all of the facts that relate to the Third-Party Defendants' contacts with Minnesota
demonstrate that the entirety of their contacts arose in their representative capacity as
attorneys on behalf of their clients.  Third-Party Defendants cite to authority in this
district that states that in order to establish personal jurisdiction over an out-of-state
lawyer, based on acts performed in his or her role as counsel, a party must show more
than mere communication with persons in the forum state at the client's behest.  *See Nash
Finch Co. v. Preston*, 867 F. Supp. 866, 868-69  (D. Minn. 1994); *see also Austad Co. v.
Pennie & Edmonds*, 823 F.2d 223, 226-27 (8th Cir. 1997) (holding that acts of a
non-resident attorney in the forum state on behalf of his client are not legally sufficient to
support exercise of personal jurisdiction over the attorney).

Devon asserts that specific jurisdiction over Third-Party Defendants exists here.
In support, Devon argues that their contacts with Minnesota are sufficient for Third-Party
Defendants to "reasonably anticipate being haled into court" in Minnesota in an action by
Kroll against Devon for the unpaid invoices under the SOW.  (Doc. No. 123 at 6-10.)
For example, Devon points to the fee agreement between Devon and Third-Party
Defendants, whereby Third-Party Defendants agreed to pay Kroll directly on behalf of

Devon for Kroll's litigation services.  Devon also points to Third-Party Defendants' communications with Kroll and their negotiation of the SOW as indications that Third-Party Defendants purposefully availed themselves of the privilege of conducting activities within Minnesota under the protections of Minnesota laws.  (*Id.*)

After reviewing the record and considering that time to complete jurisdictional discovery has passed, the Court concludes that Devon has failed to establish, by a preponderance of the evidence, that any of the Third-Party Defendants have contacts in Minnesota beyond contacts that were made in a purely representative capacity.  The record demonstrates that Third-Party Defendants' contacts with Kroll in Minnesota were made at their client's behest.  In addition, while Third-Party Defendants may have assisted in negotiating the SOW, that agreement was entered into by Devon and Kroll. Finally, that Third-Party Defendants agreed, as part of their fee arrangement with Devon, to pay Kroll from the funds received for their representation in the Pennsylvania Litigation, is not enough to demonstrate that Third-Party Defendants' connection with Minnesota is such that they should have reasonably anticipated being haled into court in Minnesota.  The Court finds that Devon has failed to establish, by a preponderance of the evidence, that the minimum contacts required to establish personal jurisdiction over Third-Party Defendants exist.  Thus, the Court grants Third-Party Defendants' motion to dismiss.[3]

---

[3]     While the Court does not separately discuss the contacts made by each Third-Party Defendant with Kroll in Minnesota, suffice it to say that all contacts between Mitts,

(Footnote Continued on Next Page)

## ORDER

Based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED**

that Third-Party Defendants' Renewed Motion to Dismiss (Doc. No. [114]) is

**GRANTED**.


Dated:  June 26, 2014              s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge

---

(Footnote Continued From Previous Page)

Milavec, or the Mitts Law Firm and Kroll were made in their capacity as Devon's legal
representative.